IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTHA LOZANO, Individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:15-cv-07515 |
| v. | ) ) Hon. Judge Amy J. St. Eve |
| AVENUE STORES, LLC, | ) ) Hon. Magistrate Judge Michael Mason |
| Defendant. | ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF AVENUE STORES, LLC'S MOTION TO STAY**

Avenue Stores, LLC ("Avenue Stores"), by and through undersigned counsel, respectfully submits this Memorandum of Law in Support of Its Motion to Stay.

**PRELIMINARY STATEMENT**

Avenue Stores moves for a temporary stay of this litigation pending the U.S. Supreme Court's forthcoming rulings in *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.), and *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146 (U.S.), both of which will be decided during the Supreme Court's current Term. The issue at the heart of *Spokeo* is whether Congress can confer Article III standing on a plaintiff who suffers only a technical violation of a statute, and who otherwise suffers no actual harm. Relatedly, in *Tyson Foods*, the Court will take up whether a class can be certified under Rule 23(b)(3) where numerous class members have suffered no actual injury. Given the issues presented in *Spokeo* and *Tyson Foods*, both cases have the potential to significantly narrow the issues before the Court in this case, if not end the case entirely. And for that reason alone, over a dozen courts throughout the country have stayed similar statutory class actions pending the outcome of *Spokeo* or *Tyson Foods*.

It is apparent from the face of her Complaint—which asserts a putative "overage text" class action—that Plaintiff's claim arises from a bare technical violation of the TCPA and nothing more; she does not allege she suffered, nor does she seek, actual damages. Plaintiff admits in her complaint that she *consented* to receive marketing text messages from Avenue Stores—which text messages she receives (and wants) to this day—but that she simply received one more text in October 2014 over and above the four texts per month she allegedly wanted.

Given that Plaintiff suffered no actual injury, *Spokeo* will directly impact whether she has Article III standing to pursue her individual claim. As courts have recently recognized in staying other TCPA class actions, the Supreme Court's "ruling in *Spokeo* may apply to the Court's subject-matter jurisdiction over statutory violations generally, including violations of the TCPA." *Boise v. ACE USA, Inc.*, No. 15-cv-21264, 2015 WL 4077433, at *1 (S.D. Fla. July 6, 2015); *see also Duchene v. Westlake Servs., LLC*, No. 2:13-cv-1577, 2015 WL 5947669, at *4 (W.D. Pa. Oct. 13, 2015) (staying putative TCPA class action and stating *Spokeo* has "the direct possibility of undercutting, or at least seriously calling into question, the Court's jurisdiction in this case").

Similarly, *Tyson Foods* will determine whether Plaintiff's putative Rule 23(b)(3) class action may be maintained despite that it requires "the inclusion of class members who admittedly lack standing" and "whether this case may proceed, notwithstanding the presence of uninjured members." *Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-1335, 2015 WL 3823142, at *5 (E.D. Mo. June 19, 2015) (staying putative 23(b)(3) class action case pending *Tyson Foods*).

Because both the *Spokeo* and *Tyson Foods* actions are set to be heard by the Supreme Court in the coming weeks and will likely be ruled upon by early this summer, a brief temporary stay will not prejudice Plaintiff (who filed suit roughly one year after receiving the offending text), but will greatly simplify the issues before the Court—if not end the case entirely. *See, e.g.*,

*Boise*, 2015 WL 4077433, at *11 (finding, in a TCPA case, *Spokeo* "may conclusively determine whether this Court has the subject-matter jurisdiction to hear Plaintiff's claims at all.").

## BACKGROUND

Plaintiff asserts a single claim under the TCPA stemming from the alleged receipt of *one* "overage" text message. (*See* DE 1 ¶ 23.) Specifically, Plaintiff signed up for and consented to marketing text messages from Avenue Stores in August of 2014. (*See id.* ¶¶ 15-19.) Plaintiff alleges she only signed up for and consented to receive marketing texts "[b]ased on the representation made by Defendant" that it would send no more than four texts per month. (*Id.* ¶¶ 16, 18.) However, Plaintiff alleges that in October 2014, she received five text messages. (*Id.* ¶ 22.) Plaintiff does not complain about any texts she received before October 2014 or after— indeed, she receives text messages from Avenue Stores to this day—but limits her complaint to the single overage text she received on October 27, 2014. On the basis of the overage text, Plaintiff filed the instant action on behalf of herself and a class of similarly situated individuals.[1]

The TCPA provides plaintiffs with a private right of action to recover either "actual monetary loss" or "to receive $500 in damages for each such violation, *whichever is greater.*" 47 U.S.C. § 227(b)(3)(B) (emphasis added). In other words, the TCPA's damages provision presents Plaintiff with an either/or choice: she can recover actual monetary loss *only if* that amount *exceeds* $500. Plaintiff does not allege any such actual monetary loss, either as to herself

---

[1] It is abundantly clear that such a class would be based on the scope of consent of each individual class member, which is inherently subjective, and thus virtually impossible to certify. *See, e.g.*, *See, e.g.*, *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 583 (N.D. Ill. 2014) (denying certification and finding that the plaintiff must provide evidence that subjective inquiries do not predominate); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 n.7 (N.D. Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010) (denying certification of a subclass where subjective inquiries were required). Such individualized considerations explain why no overage case has ever been adversarially certified, let alone succeeded on the merits.

or any class member. As is plain from Count I of her Complaint, Plaintiff only seeks to recover *statutory* damages. (*See* DE 1 ¶ 4, Prayer for Relief.) [2]

## DISCUSSION

I. **THIS COURT SHOULD ENTER A TEMPORARY STAY PENDING RULINGS FROM THE SUPREME COURT IN *SPOKEO* AND *TYSON FOODS* REGARDING WHETHER THERE IS SUBJECT-MATTER JURISDICTION TO HEAR THIS CASE.**

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Specifically, "[i]n deciding whether to enter such a stay, courts consider the following factors: (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer, Inc. v. Apotex, Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (granting motion to stay). All three elements are satisfied here and countenance in favor of entering a stay.

    A. **A Stay Will Not Unduly Prejudice or Tactically Disadvantage Plaintiff.**

Here, a stay is warranted based on ongoing proceedings before the U.S. Supreme Court, which will directly affect whether this Court has subject-matter jurisdiction over this litigation. A stay will simply preserve the status quo and will only result in a delay of finite duration. Both *Spokeo* and *Tyson Foods* are fully briefed and are scheduled for oral argument next month on November 2 and November 10, 2015, respectively. (*See* U.S. Supreme Court, Oral Argument

---

[2] Despite referring to the text messages at issue as "spam," (*see* DE 1 ¶ 14), it cannot be overlooked that Plaintiff admittedly consented to receiving these text messages and has yet to opt out of receiving them. (*Id.* ¶¶ 15-19.) Plaintiff's internal inconsistency here highlights her counsel's effort to create a harm where there simply is none.

Calendar for the Session Beginning Nov. 2, 2015, attached hereto as Exhibit A.) Such a "delay of limited duration" will not prejudice or tactically disadvantage Plaintiff in any way—certainly not *unduly* so. *See Pfizer*, 640 F. Supp. 2d at 1008; *Bradley v. L'Oreal USA, Inc.*, No. 10-cv-433, 2010 U.S. Dist. LEXIS 89242, at *8 (S.D. Ill. Aug. 30, 2010) (rejecting plaintiff's arguments that she would be tactically disadvantaged by a stay pending a Supreme Court decision); *Duchene*, 2015 WL 5947669, at *2 (granting motion to stay and noting that a stay pending the outcome of *Spokeo* "will not be excessively burdensome or prejudicial because it will be of a short and definite duration").

Indeed, courts in this District have granted stays pending a ruling from the Supreme Court where the stay would result in delay "for as much as a year or more." *Cortes v. Bd. of Governors*, No. 89-cv-3449, 1991 U.S. Dist. LEXIS 10549, at *3 (N.D. Ill. July 25, 1991). Defendant's request for a stay of no longer than eight months (the Supreme Court's 2015 Term ends in June 2016) is rather modest in comparison. As the *Boise* Court noted, the stay "only [stood] to delay Plaintiff's potential recovery for a period likely less than twelve months." 2015 WL 4077433, at *6. Several other federal courts nationwide have also ruled that "a stay of several months [pending a higher court ruling] will cause no prejudice or hardship to [a plaintiff]." *In re Literary Works in Elec. Copyright Litig.*, No. M-21-90, 2001 U.S. Dist. LEXIS 2047, at *7 (S.D.N.Y. Mar. 1, 2001); *Ruggeri v. Boehringer Ingelheim Pharms., Inc.*, No. 06-cv-1985, 2012 U.S. Dist. LEXIS 70781, at *3-4 (D. Conn. Feb. 24, 2012) (defendant filed motion to stay on Dec. 2, 2011 pending Supreme Court decision, motion granted Feb. 24, 2012, and Supreme Court decision issued on June 18, 2012); *Homa v. Am. Express Co.*, No. 06-cv-2985, 2010 U.S. Dist. LEXIS 110518, at *1 (D.N.J. Oct. 18, 2010) (granting stay in Oct. 2010 pending Supreme Court decision which was expected to issue "sometime in 2011").

In light of the near certainty that the Supreme Court will issue opinions in *Spokeo* and *Tyson Foods* by the end of June 2016—and likely earlier considering the fast-approaching oral argument dates—there is no reason to believe that a stay would be a detriment to Plaintiff. This is all the more so considering that Plaintiff waited nearly one year (the allegedly offending text message was received October 27, 2014, (*see* DE 1 ¶ 22)) before filing her own Complaint.

B.     A Stay Will Simplify the Jurisdictional and Procedural Issues in Question.

The Supreme Court's forthcoming decisions in *Spokeo* and *Tyson Foods* will have a direct effect on this Court's jurisdiction under Article III of the Constitution to adjudicate the claim alleged in Plaintiff's Complaint. In both cases, the Supreme Court must address—in the context of putative Rule 23(b)(3) class actions for purely statutory violations such as this one—Article III's requirement that litigants in federal court have standing to sue, *i.e.*, an "injury-in-fact" that is "concrete, particularized, and actual or imminent." *Boise*, 2015 WL 4077344, at *3 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 130 S. Ct. 2743, 2752 (2010)).

In *Spokeo*, the Supreme Court will decide "if a plaintiff has Article III standing based solely on a 'bare statutory violation.'" *Boise*, 2015 WL 4077344, at *5. Significantly, the Supreme Court will resolve a Circuit split among the Courts of Appeals as to "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Pet. for Writ of Certiorari, *Spokeo, Inc. v. Robins*, No. 13-1339, 2014 WL 1802228, at i (U.S. May 1, 2014) ("*Spokeo* Cert. Pet."). This Constitutional issue is directly on-point with respect to Plaintiff's claim, because she alleges bare violations of the TCPA instead of monetary loss or some other transgression sufficient to

rise to the level of an Article III injury-in-fact.[3] As the Petitioner in *Spokeo* has noted, Supreme Court review in that case will "have the additional practical benefit of resolving the same constitutional issue as it arises under many more federal statutes [including] . . . [t]he Telephone Consumer Protection Act, which regulates telephone solicitations and provides for statutory damages." *Spokeo* Cert. Pet. at 16. Indeed, where "a higher court is close to settling an important issue of law bearing on the action," *In re Literary Works*, 2001 U.S. Dist. LEXIS 2407, at *5, it is prudent to wait for the Supreme Court to provide finality on the issue before moving forward with costly discovery and motion practice.

In *Tyson Foods*, the Supreme Court will address "[w]hether a class may be certified or maintained under Rule 23(b)(3) . . . when the class contains hundreds of members who were not injured and have no legal right of damages." Pet. for Writ of Certiorari, *Tyson Foods v. Bouaphakeo*, No. 14-1146, 2015 WL 1285369, at i (U.S. Mar. 29, 2015). Therefore, *Tyson Foods* raises serious questions—in both this and other putative class actions seeking damages for statutory violations—regarding "the inclusion of class members who admittedly lack standing." *Perrin*, 2015 WL 3823142, at *4 (stating that "the Supreme Court's decision in *Bouaphakeo* is likely to provide instruction regarding whether this class may proceed, notwithstanding the presence of uninjured members, and if so, how"). Assuming, *arguendo*, that the putative class

---

[3] In paragraph 2 of the Complaint, Plaintiff asserts that by sending the alleged overage text at issue, "Defendant has violated consumers' statutory and privacy rights and has caused consumers actual harm, not only because consumers were subjected to the aggravation and invasion of privacy that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam." (DE 1 ¶ 2.) However, such allegations lack any factual support whatsoever, and also appear to be the identical generic allegations Plaintiff's counsel uses in all of their TCPA complaints. (*See, e.g.*, *McKenna v. WhisperText, LLC*, Case No. 14-cv-00424, DE 1 ¶ 2 (N.D. Cal.).). Plaintiff does not allege to have suffered any harm whatsoever, let alone the harm described in paragraph 2 of the Complaint.

members whom Plaintiff seeks to represent are truly "similarly situated," there is a very strong likelihood that some or all of the class members will also be unable to show a Constitutionally sufficient injury-in-fact.

In sum, the Supreme Court's decisions in *Spokeo* and *Tyson Foods* will determine this Court's jurisdiction over both Plaintiff's individual claim *and* the claims of putative class members as alleged in the Complaint. This means that the strident disagreement among the Courts of Appeals regarding these issues will be resolved once and for all—in this putative Rule 23(b)(3) TCPA class action and others like it. Under these circumstances, a stay is warranted until the Supreme Court rules.

**C.   A Stay Will Reduce the Burden of Litigation on the Parties and on the Court.**

If this Court declines to stay this action pending the rulings in *Spokeo* and *Tyson Foods* and the Supreme Court ultimately determines that a plaintiff such as Plaintiff here does *not* have Article III standing and/or that a Rule 23(b)(3) class action cannot include class members who lack Article III standing, then all of the time and effort expended by the Court and the parties during the ensuing months will have "wasted the court's time and [the] clients' money." *See Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) (chastising attorneys for failing to properly address the district court's basis for subject-matter jurisdiction). If Plaintiff then decided to refile her case in state court, the parties would be required to brief in state court (under state law) all issues that they briefed in this Court (such as motions for summary judgment or class certification).[4] *See id.* (noting that a lack of jurisdiction "leads to . . . the need

---

[4]   This outcome is a very real possibility in this case should the Supreme Court rule in favor of the petitioner in either *Spokeo* or *Tyson Foods*. It is likely that any scheduling order issued in this case will set class certification briefing deadlines before the Supreme Court is likely to rule. Presumably the Supreme Court will rule sometime in the Spring or, at the latest, early Summer

to start over in state court"); *E. R. Squibb & Sons v. Accident & Cas. Ins.*, 160 F.3d 925, 929 (2d Cir. 1998) ("It would . . . be most unfortunate if, in the end, it were necessary for us to hold that no federal jurisdiction existed and that the parties has to start all over again in state court.").

In short, this case should be temporarily[5] stayed so that the parties can move forward with the benefit of potentially dispositive Supreme Court rulings, and without those forthcoming decisions hanging over their heads.[6] Neither motions for class certification nor summary judgment have been briefed, nor has a discovery schedule been set. This Court should not hesitate in following the decisions of at least fourteen courts around the country that stayed putative class actions pending the Supreme Court's resolution of *Spokeo* and/or *Tyson Foods*:

- *Duchene v. Westlake Servs., LLC*, No. 2:13-cv-1577, 2015 WL 5947669, at *4 (W.D. Pa. Oct. 13, 2015);

- *Provo v. Rady Children's Hosp. San Diego*, No. 15-cv-81, 2015 U.S. Dist. LEXIS 100491, at *3-4 (S.D. Cal. July 29, 2015);

---

of 2016. *Cf. Couick v. Actavis, Inc.*, No. 09-cv-210, 2011 U.S. Dist. LEXIS 10094, at *3-4 (W.D.N.C. Jan. 25, 2011) (granting stay pending Supreme Court decision because "[f]or the parties to brief and the Court to determine a motion for summary judgment involving the very issue the Supreme Court will decide in short order would be imprudent, especially where the issue may be dispositive to the Plaintiff's case").

[5] During the most recent completed Supreme Court Term (O.T. 2014), the average time for the Court to release opinions following oral argument was 95 days. SCOTUSblog Stat Pack for October 2014 Term – Time Between Oral Argument and Opinion (June 30, 2015) [hereinafter "SCOTUSblog 2014 Stat Pack"], http://sblog.s3.amazonaws.com/wp-content/uploads/2015/07/SB_argtoopinion_OT14.pdf (attached hereto as Exhibit B).

[6] Grants of petitions for certiorari result in reversal with far more frequency than affirmance. During the October 2014 Term, the Supreme Court reversed the lower court's decision 72% of the time. The Ninth Circuit ruled against *Spokeo* and the Eighth Circuit ruled against *Tyson Foods*. During the 2014 Term, the Ninth Circuit was reversed 63% of the time, and the Eighth Circuit was reversed 88% of the time. *See* SCOTUSblog 2014 Stat Pack – Circuit Scorecard, http://sblog.s3.amazonaws.com/wp-content/uploads/2015/07/SB_scorecard_OT14.pdf (attached hereto as Exhibit C).

- *Stone v. Sterling Infosystems, Inc.*, No. 2:15-cv-00711, 2015 WL 4602968, at *3 (E.D. Cal. July 29, 2015);

- *Flores v. Collection Consultants of Cal.*, No. 8:14-cv-00771, ECF No. 45 (C.D. Cal. July 27, 2015);[7]

- *Hillson v. Kelly Servs.*, No. 2:15-cv-10803, ECF No. 29 (E.D. Mich. July 15, 2015);

- *Boise v. ACE USA, Inc.*, No. 15-cv-21264, 2015 WL 4077433, at *5-6 (S.D. Fla. July 6, 2015);

- *Etzel v. Hooters of Am., LLC*, No. 1:15-cv-1055, ECF No. 17 (N.D. Ga. June 26, 2015);

- *Larson v. Trans Union, LLC*, No. 3:12-cv-05726, 2015 WL 3945052, at *1 (N.D. Cal. June 26, 2015);

- *Ramirez v. Trans Union, LLC*, No. 3:12-cv-00632, ECF No. 184 (N.D. Cal. June 22, 2015);

- *Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-1335, 2015 WL 3823142, at *5 (E.D. Mo. June 19, 2015);

- *Kirchner v. Shred-It USA, Inc.*, No. 2:14-cv-01437, ECF No. 59 (E.D. Cal. June 18, 2015);

- *In re Monitronics Int'l, Inc., TCPA Litig.*, No. 1:13-md-2493, ECF No. 462 (N.D.W.Va. June 17, 2015) (staying multi-district TCPA litigation);

- *Syed v. M-I, LLC*, No. 1:14-cv-00742, ECF No. 69 (E.D. Cal. May 29, 2015);

- *Williams v. Elephant Ins. Co.*, No. 1:15-cv-119, 2015 WL 3631691, at *1 (E.D. Va. May 27, 2015).

\* \* \*

Granting a stay for a matter of months, and awaiting essential guidance from the Supreme Court on these issues this Term, would increase judicial efficiency, conserve resources, avoid superfluous efforts and inconsistent rulings, and promote the orderly progression of this case.

---

[7] Copies of all cited authorities not available on Westlaw or Lexis are attached hereto as Group Exhibit D.

## **CONCLUSION**

For the foregoing reasons, Avenue Stores, LLC respectfully requests this Honorable Court: (i) to enter a temporary stay all proceedings in this action pending the U.S. Supreme Court's final disposition of *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S.) and *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146 (U.S.); and (ii) to award all other relief deemed equitable and just.

Dated:  October 29, 2015

**SHEPPARD MULLIN**
**RICHTER & HAMPTON LLP**

By:  /s/ *David S. Almeida*
One of Their Attorneys

David S. Almeida, ARDC #6285557
dalmeida@sheppardmullin.com
Mark S. Eisen, ARDC #6312738
meisen@sheppardmullin.com
David M. Poell, ARDC #6302765
dpoell@sheppardmullin.com
**SHEPPARD MULLIN**
**RICHTER & HAMPTON LLP**
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
Telephone:  (312) 499-6300
Facsimile:  (312) 499-6301

*Counsel for Avenue Stores, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing **MEMORANDUM OF LAW IN SUPPORT OF AVENUE STORES, LLC'S MOTION TO STAY** was served upon all interested parties using this Court's ECF filing system this 29th day of October, 2015.

/s/ *David S. Almeida*